Good morning and may it please the court. Kate Morris of the Federal Public Defender's Office on behalf of Michael Jolly. I'd like to reserve three minutes of my time for rebuttal and I'll keep an eye on the clock. I'd like to start by clarifying what happened below with respect to the three jail calls were challenging from September 13th, 23rd and 26th. Everyone agreed that those calls pertained at least in part to other acts. That's clear from the transcript of the pretrial motions hearing at pages 59 to 69 of the record. Everyone agreed that this was mixed evidence in the sense that even if those calls could be construed as admissions to the charge conduct, they also pertained to other acts. The problem was the district court made a basic legal error regarding how mixed evidence is treated under Rule 404B. The district court held that if evidence pertains in part to the charge conduct, it necessarily does not trigger Rule 404B. That was legal error and this court's review is de novo as the government agrees. Because of that error, the calls were admitted without the required 404B safeguards. There was no limiting instruction and not only that, the government used the calls as propensity evidence at trial. That was prejudicial. It's the government's burden to prove harmlessness and it cannot meet that burden because the calls were the centerpiece of its case. This court should reverse and remand for a new trial. So what is the part that you think is propensity evidence in these calls? So for the September 23rd and September 26th phone calls, it's the statements, I sell drugs to five people and I sell drugs to six people. For the September 13th phone call, it's the sentence where Jolly says, he's relaying a conversation with a police officer on another arrest and he says that he told the police officer, yes, I'm far from ahead, I'm never getting ahead with you guys fucking with me. Okay, so let's put aside the 13th one for a second because I think that one is harder to even understand. But the two that are about I sell drugs, why isn't that a statement about the time period in question that makes it more likely that he would have possessed drugs with the intent to distribute at the time on the July arrest? I think I would say it could conceivably be construed that way, but it would have to be admitted under 404B with a limiting instruction and it couldn't be used as propensity evidence because he's saying I sell drugs to five or six people and the standard this court articulated in Parks was if evidence directly relates to other crimes and a jury would likely infer from the statement that the defendant had committed other bad acts in the past, it's 404B. Why would you say it directly relates to the other times? That is, there's nothing about the call itself that gives that other dates. That is, we know that he was arrested on several other occasions, but how would a jury infer that it referred to something else when he's on trial for this one particular date? Well, a couple of... If he had said I sell drugs in June or something or in May, then I would understand that, but I didn't know, it wouldn't give me the best argument as to why they would imply that it talked about something else. Well, I think when he says I sell drugs to five or six people, that sounds like repeated conduct. It sounds like a pattern. I sell drugs. I am a drug dealer at this moment. And we know that he didn't know at the time of the phone calls which of his three arrests was going to be federally indicted. So we know he's not just talking about July 2nd. And in terms of what the jury hears, I think if they're hearing someone say I sell drugs to five people, I sell drugs to six people, it sounds like they're saying I'm a drug dealer. And the problem also is that the government used it that way. So even if something is admissible under 404B, you can't use it to argue propensity. Are you conceding that these statements referred at all to July 2nd? Do you acknowledge that that a jury could read into these statements something related to July 2nd? Or do you dispute that also? I acknowledge that the jury could. There's a world where a jury could interpret these as an admission. But the problem is that they also refer to other acts. And so they would have had to come in with a limiting instruction. And they cannot be used by the government as propensity evidence. In a case where there's some inference one can draw that relates to the crime charged and some inference one can draw that relates to other acts, what do you think the analysis should look like? Should we be looking at the statements and the context and saying more likely than not, a jury would read into this something that's propensity evidence? Or is the fact of any propensity evidence in there something like a poison pill that then required the 404 instruction? I think the problem is if the jury can infer other bad acts, that's the 404B problem. That's what this court said in Parks. And I would also add that the government has waived any argument that this was admissible for a non-propensity purpose under 404B. They've never identified a non-propensity purpose below or on appeal. So that argument has been waived by them. And the problem here is that these statements were admitted as direct evidence but then used as 404B. So even if sitting here today we can come up with a non-propensity purpose like as a confession for these phone calls, that's not how they were used at trial. And so we can't take away the harm of that now with coming up with a post hoc ground for admissibility. So can I go back to though, this crime, it seems like almost a premise of your argument is that on July 2nd, he was arrested for selling drugs. And so like if he had been arrested for selling drugs to one person, saying five or six might mean there are additional ones. But he was actually charged with possession with intent to distribute. So I don't even really understand how saying I have five or six customers is not just direct evidence of that crime. Well, even if that's what the court thinks, it was used that way at trial. Well, how do you tell the difference? I mean, if it is direct evidence of the crime he's charged with when they're making those statements, it's just evidence of the crime he's charged with. I'm sorry, I'm not sure I understand the question. If you think a statement, I sell drugs to five people is direct evidence of intent to distribute, then saying he is a drug dealer selling to five people is direct evidence of intent to distribute. I don't understand really where it departs. Well, that's not what they did at trial. So at trial, I mean, the district court thought they were violating Rule 404B. Well, the district court seems to have been very confused, but I think you want us to have de novo review. So let's not worry about that and just figure out what the right answer is. Well, OK. The way these phone calls were used was as propensity evidence, even if they were direct evidence. Even if this court thinks that they could be construed as admissions, they were used to argue propensity. I think that's clear from the government's opening statement. As I said, the district court thought they were using them. But sorry, in what way? What is the part again? Because I think when I asked you, you said it's this, I have six customers. Well, it's, let me pull up the opening statement. So they say, this is page 804 of the record. They say, I sell drugs to six people. I'll admit to that. I'll admit to that all day. Those are the defendant's words you'll hear in this trial, not once. There are multiple calls in which defendant admits he's a drug dealer and that he had drugs to sell on July 2nd, 2020. So I think when you're calling someone a drug dealer, we don't... That latter part isn't really accurate at all, is it? That is, at least from those calls that we're talking about, he, your client, doesn't say anything about having drugs on July 2nd. Now he does in the phone call of the 14th. So I might ask you about that because from a harmlessness point of view, it was uncontested. He was allowed to testify. I was allowed to bring in the statement from the phone call, if I have it correctly. They found me with a billion dollars worth of drugs in my backpack. That's the, yeah, the phone call from the 14th. That's right. And isn't that enough almost by itself to make all of this harmless, but that's that kind of direct evidence. I don't think so, Your Honor, because we transmitted the audio of that phone call, this Exhibit 123A, and he was being sarcastic in that phone call. He called it, he said it was bullshit, this news article that he's talking about. And to the extent the government thinks that that was an admission, it's their burden of harmlessness, and it's a high standard in the context of 404B. There's a presumption of prejudice, and the question is, can this court say with certainty that the error did not influence the jury and affect the verdict? And so to the extent that phone call could be construed as an admission, they can't prove that, because as we pointed out, as the defense pointed out to the jury, he's being sarcastic, he's calling that news article bullshit, he's saying that's not true, that's absurd. So they can't say that the jury construed that phone call as an admission. The burden's on them, and it's a high one. And why is it, can you go back to why saying someone is a drug dealer with several clients isn't direct evidence of possession with intent to distribute? Well, I think what I was saying was even if you think it is direct evidence, it was used to argue propensity at trial. And in the opening, I didn't get to this bit, but they call him a drug dealer several times, they call him a drug dealer who was caught in the act, and at page 807 they say on one phone call he admits that he sells drugs to six people, on another he's talking about what happened on July 2nd. So I think that's pretty clear that they're saying he's a drug dealer. We don't call someone a drug dealer who sells drugs one time. That's just not the phrase that we use. And we don't say someone's a drug dealer caught in the act when it's a one-off. So they're suggesting that this is a repeated pattern on his part. But I guess I just don't understand, if having a repeated pattern of clients is direct evidence of possession with intent to distribute, then when you talk about someone having several clients, it seems like you're talking about something that is relevant. You want to have it jump to propensity, but when they overlap so much, I'm having trouble understanding how we know whether they're just talking about the direct evidence or the propensity. Well, it's not just the number of clients, it's the phrase I sell drugs. That's the phrase they keep using at trial. I mean, they use that many times, and then they say he's admitted he's a drug dealer. So I think what they're clearly suggesting and what the district court thought they were suggesting was that the jury could infer that his guilt on July 2nd from his status as a drug dealer, and that's a 404B violation. But wouldn't it be evidence of intent to distribute? Well, it could be, but because a jury could infer other bad acts, it's also 404B, and it would have to come in with a limiting instruction and notice and not be used for propensity evidence. And did you ask for a limiting instruction? Yes, yes. That's at 129 is the limiting instruction that the defense proposed, and the court denied it at pages 989 to 991 of the record. And that's the court has for the questions. I'd like to reserve the rest of my time for rebuttal. I guess the limiting instruction doesn't use the drug dealer, though. That's what I was wondering. You didn't ask for an instruction that says you can't call him a drug dealer, but I guess maybe you're saying this is close enough. Yes. Thank you. Good morning, and may it please the court. David P. on behalf of the United States. The jail calls in this case were admissible and not 404B propensity evidence because they related either to defendants' July 2nd conduct or to all three of defendants' drug arrests, including the one on July 2nd. There isn't serious dispute that the call is related, at least in part, to July 2nd. The party's key disagreement is what to do when the same piece of evidence may be both direct and potentially also other acts evidence. The law on this circuit is clear from U.S. v. Lillard, which held that rule 404B is, quote, inapplicable where the evidence the government seeks to introduce is directly related to the crime charged in the indictment. That's the world that we are in. Now, the defense has raised as their best case U.S. v. Parks as a mixed propensity and direct evidence case, but that is not true in Parks. Parks related to a defendant who was charged with bank robbery-related crimes. At trial, there was testimony from a law enforcement officer connecting that defendant to a getaway car. That was permitted and that is direct evidence of the crime he was charged with, but that officer exceeded the scope of what he was permitted to testify about and said the reason for his surveillance was related to other robbery-related investigations. There are two distinct pieces of evidence, one that would have been permissible as direct evidence, and the other which would be propensity evidence in Parks. That's not the facts that we have here. The statements on the three jail calls were all related to the offense conduct itself, and it is not possible to separate those statements in a way that removes any kind of potential inference that they relate to other acts as well. Is it even clear what arrests these statements were referring to at all? It is, Your Honor, and the district court made the ruling under 104A. It's by a preponderance of the evidence, and at the hearing where the parties discussed these jail calls, it is uncontested that at the time the defendant made these calls, he was in jail following a series of three arrests for drug-related conduct on July 2nd, August 9th, and August 28th. It is also uncontested by the parties that he expressed surprise on the calls to learn that at least one of those arrests would result in a federal prosecution. Right, but the other side says, well, at the time, he didn't know which of the arrests would lead to the federal, or was the subject of the prosecution, which was announced later. Is that not relevant? Well, the government raised that because it is plausible that he may have had an inkling or knew that the July 2nd would be the federal charge, but the point is that How would he have any inkling of that? I mean, other than just this one-third probability. Well, his state defender told him that something would be taken federally. It was unclear from the record whether or not that state defender knew which of the charges or told him, but the point is that all three were potentially going to go federal. He knew one of the three would be federal, and he was complaining about that on the September 23rd and 26th calls. He's complaining about that, and it is clear he's complaining about any of them potentially going federal. He would not be happy if any of them did. He didn't say, you know, the August arrests, well, I'm surprised those would go federal, but I didn't even commit a crime on July 2nd. He's saying, if any of these go federal, why would they do that? I only sell to five or six people. So that's how we know he's referring at least in part to July 2nd on those calls, and with respect to the September 13th call, it is even more clear that he was aware which arrests he was talking about because he was laying to the participant on the call a conversation he had with the arresting officer on his August 28th arrest. There he says that the officer said, well, given the last time, three times we busted you, you must really be feeling the pinch because we've taken all your money and drugs, and the defendant says, yeah, I'm really having trouble making a profit here. I'm paraphrasing. I would say, though, I mean, we haven't got to the September 13th call, and it seems that the redactions, the point of them was to eliminate this other acts issue, but in the course of doing that, it somewhat changed the reference point of the call itself. If you didn't know about the other acts, the jury would hear this and think he's referring to the time when he was arrested for what was ultimately charged, which is not correct. Well, it is correct in part because he is in part referring to July 2nd because he's talking about three arrests, and July 2nd was one of them. Right, but I mean, the way this was presented to the jury, it was almost as though, of course, he was talking about a conversation with the officer who had arrested him on July 2nd, which is somewhat misleading because that's not what he was referring to. Well, that's true. It actually happened to be the same officer, Pinedo, on July 2nd and August 28th, but I understand your point, Your Honor. The issue is that the court, in conversation with the defense, made these redactions to protect the defense from any kind of propensity, suggestion, or inference. The defense, at the time, was happy with that. They could have, at any time, introduced evidence at trial to show that the calls referred to other acts if that's what they thought was preferable for their defense, and in fact, in their closing, that is exactly what they argued. They argued that the calls referred to other acts. So this redaction was not prejudicial to the defendant. The defendant thought it was in their best interest at the time, and they could have easily asked to leave it in and leave the calls unredacted. But I want to move to the sort of best case in this circuit. I talked about distinguishing parks, but here, the cases that are most on point in terms of the facts and the reasoning are Dorsey and Nekocha Varela. In Dorsey, the defendant was charged with firing a gun to intimidate a grand jury witness. At his trial, there were two witnesses who testified to seeing the defendant with a Glock-like gun in the months leading up to the alleged conduct. That testimony could have related to other acts. It could have been a different gun, or one of them could have been a different gun, and the other witness could have been referring to the very gun used in the alleged conduct. Or it could have just been the same gun. So we have a good case here of mixed evidence. And what the court held was that it rejected or declined to regard that evidence as 404B because it in part, quote, bore directly on the commission of the crimes, end quote. So that is consistent with Lillard, which holds that once you are in the universe of something that is direct evidence, 404B does not apply. The same is true of Nekocha Varela. This is an unpublished case, but the facts and reasoning are instructive. That was a case related to alien smuggling. The defendant was, 12 days after the alleged conduct, the defendant gave a statement. In the statement, he said 10 days prior, he had been arrested for alien smuggling. Again, that statement could have referred to other acts because the charge offense was 12 days prior. He's saying that he had smuggled 10 days prior. It could be other acts. He could have been confused, and it could have related to the charged offense as well. It's unclear. It's mixed evidence, 404B and direct potentially. So what would have happened here if instead the statement had just said, I sold drugs to three people on July 2nd, or five people on July 2nd, August 1st, and August 5th? So then what? We'd say, well, part of that is rule 404B, and we should redact that? Well, I think that the issue, first of all, should be considered admissible in general as direct evidence of the charged offense. With respect to the statements about other acts, I think it's appropriate for the district court to discuss with the defendant what their preference is on that. It is bad evidence for the defense. That's true. Wait a minute. How could that not be? I just want to, would that not be other acts evidence to say, I sold drugs to five people on July 5th or July 2nd, August 2nd, August 3rd? Yes, it certainly would be other acts evidence, but the law is clear that when you have a mixed statement that relates to both direct and other acts, it is on the 104A analysis admissible. Now, it may be prejudicial in some way. But you would say even in that situation, no propensity instruction would be required? Oh, no, I wouldn't say that no propensity instruction is required. If that statement about other acts makes it in to court, I think it's appropriate for there to be limiting instruction saying that the jury should not consider those other acts for propensity purposes. I think that would be appropriate. But why is the statements here not just shorthand for that, given what happened? Well, for several reasons, Your Honor. The court did its best to limit any kind of prejudicial inference with respect to the statement, I'd sell drugs to five people. There were redactions to try to conceal the other events that had happened. The government never argued propensity. The government never raised the fact that there were other drug deals or arrests. The government was... Called him a drug dealer throughout. Well, that's true, Your Honor. And somebody sells drugs on one occasion, they are a drug dealer. And in Nekoetia, this court was clear that using the term, calling a defendant a dope dealer for a single count, that's appropriate. That is not a propensity argument because that is the charge defense. When you are charged with possession with intent to distribute, you're charged for being a drug dealer. Oh, but you're admitted to being a drug dealer, right? It wasn't just that you're referring to this charge. You're saying you heard from his own voice that he is admitted to being a drug dealer, right? That's true. Doesn't that sound like propensity evidence? Well, not when the charge crime is possession with intent to distribute because that is what we're saying, that he's guilty of the crime. The crime is being a drug dealer, at least on one occasion. I do want to turn to that. I've read all of those and they never limit the rhetoric to that occasion because you're saying you're going to hear from his own voice and he never uses the word July 2nd. That's true. That's true. Well, the government argued that the jury should make the inference that he's referring to July 2nd. But I think this is a good segue, Your Honor, into this point that the defense has made numerous times that the government relied heavily on the three contested calls. And I want to address that. This kind of goes to the harmlessness argument. The government's closing argument occupies 20 pages of transcript. Of that, less than one page relates to all three calls cumulatively. That is less than 5% of the closing of the government's closing related to the highly inculpatory, highly persuasive evidence against the defendant. And I don't have time to go through all of it, but I think it bears noting at least a couple. So, for example, the items that were in the backpack and on the defendant included cutting agent with a plastic piece with his fingerprint on it and a digital scale. The more than $400 of cash and weapons. And all of this together shows that he was involved in drug distribution. This is one of those things where perhaps even without these calls, the jury would have reached the results. But the harmless argument is a tough one when you look at the opening and closing. I mean, the opening begins. I sell drugs to six people. I'll admit to that. I'll admit to that all day. Those are defendants' own words you'll hear in this trial, not once. There are multiple calls. I mean, this is the framing of the case around the calls. It's a catchy line, Your Honor. But as I said, the amount of time the government spent on those calls is minimal, less than 5% of the closing. And in the rebuttal, the government spent twice as much time on the uncontested September 14th call than it did on all three of the contested calls together. Yeah, but I mean, this is a case that went to a mistrial first, right? So there were a couple of things that changed from the first trial to the second, and a big one were these calls. Well, I would say that the biggest change between the two trials, Your Honor, is that the defense had to change their strategy and the theory of their defense because of new evidence, uncontested new evidence at the new trial. In the first trial, the defendant argued that Wade Batchelor switched bags with him. That was no longer possible because of the September 14th uncontested call where he described the backpack with the drugs in it as my backpack. It is also implausible because... I don't think he's ever disputed that it was his backpack, right? He didn't say it was his drugs. He did in the first trial, Your Honor. He disputed that the argument was, it's not my backpack in the first trial. They were forced to abandon that argument because of the September 14th call and the fact that his fingerprint was in something in the backpack. So he changed... It wasn't just in the backpack, was it in the pouch in the backpack? It was not. It was separate from the pouch. So the theory of the defense... If these phone calls existed, they had happened before the first trial. Was there any reason you didn't introduce them at the first trial? Yes, Your Honor. Basically, the reason is because the trial prep, we didn't know we were going to trial until very close in time and the jail calls at that time had not been obtained by the government even though they were at the jail. They did exist. They did exist, but the government didn't have them. Can I ask you a slightly different question? At ER 16, the district court says something that the district court misunderstood the calls because the district court says that... Or maybe you misunderstood what crime was charged. The district court says that this call is direct evidence that defendant sold drugs on July 2nd, 2020. I don't think we have a situation here where a defendant is charged with selling drugs on July 2nd or admitting it. So what do we do with that? Well, yes, that is correct, Your Honor. But I don't think that that was the sole basis on which the district court ruled that this was direct evidence of the charged offense. As I said, the discussion on the record shows the September 23rd call was played for the court. A discussion was had about the arrest that led to those calls. And so the court was aware and based its decision, at least in part, on the fact that the defendant was referencing his three arrests, which included July 2nd. I see that I'm out of time. So unless the court has further questions, the government asked... Sorry, I'm not sure I understood your answer to my last question, and you can keep going as long as we're asking questions. So what do we make of the fact that the district court seems to have thought either that the calls or the crime involved actually selling drugs on July 2nd? It seems like the district court was confused about both, I guess, the substance of what the calls admitted and maybe what happened on July 2nd too. Well, we don't know that the defendant didn't sell drugs on July 2nd. He wasn't caught selling drugs. But the admission that I sell drugs to five or six people on that day, that could also be true. It's just that he was caught after he had done those things. Well, he didn't say on that day though. That's also true. But he's balking at the fact that he would be charged and he knows that one of the potential charges arises from his conduct on July 2nd. So that is the inferential chain, if you will, that led the district court to believe he was referring, at least in part, to conduct that took place on July 2nd. Because he knew which arrests he was there for, and he knew what his pending charges were, and he was saying, why would any of these federal? I only sell to five or six people. Is the distinction between possession and selling, do you think it's a meaningful one in terms of resolving this particular question here? Because the possession charge wasn't just simply possessing it, it was possessing with intent to distribute. Yes, your honor, you mean in relation to the statement, I sell drugs to five or six people? Yeah, exactly. Yeah, I don't think the distinction is important because if you sell to five or six people, what necessarily you must first possess with intent to distribute. And so that statement is consistent with admitting to key parts of the charge defense in the federal case. Yeah, I'm just trying to understand whether the nature of the charge here and when we're asking, you know, what's the relation of I sell drugs to the crime of possession, whether this just kind of restates the problem or is it a different way of looking at it? Well, I think it is, I think it relates directly to the conduct that was charged because if it is true that he deals drugs to five or six people and dealt drugs to five or six people on July 2nd, that would be probative. You keep jumping to that. No one ever said, this is why I think the district court made a mistake. No one ever proved that he sold drugs to people on July 2nd and no one ever said it on a call. So when you add that, you're adding to the confusion here. I understand your honor. So even though he's not saying that I sold on July 2nd in particular, the first step is a question of admissibility. And that is by preponderance of evidence, was the defendant referring in part to conduct that took place on July 2nd? And is that conduct probative as to whether or not he was, or is it relevant? Is it probative to whether he committed the charge And so by referring to his three arrests and talking about his surprise that any of them would go federal, because he only sells to five or six people, he is talking about his conduct during the relevant period from July through August. And because he sells to five or six people during that entire period, it is probative as to whether or not he possessed on the particular date that falls within that time period. That's kind of the usual argument. I mean, propensity evidence is probative. The fact that somebody sold drugs three times makes it more likely that they sold them a fourth time. But the law comes in and says we're going to put some limits on that because that can be very prejudicial. And here the issue is that there was not an instruction given to help cabin some of that. Well, the reason that this is not a situation of propensity is because that time period, like in Dorsey, like in Nekocha Varela, that time period included was inclusive of the date of the charge defense. So in other words, if a defendant says I sold drugs from January 1st to January 10th and there's a charge defense on January 5th, well, then you're in the territory of direct evidence of the crime. If the charge offense was January 20th outside that period, well, then I agree that it would then be just purely propensity because in that case the time period covered by the admission does not include the time period where the offense conduct occurred. Does that address your question, Your Honor? Thank you. Yes. We've taken you over your time. Thank you very much. Thank you very much. The government asks that the court affirm. Let's put five minutes on the clock for rebuttal, please. I'd like to start by responding to the arguments about the September 13th phone call. I think Judge Brass, you had some questions about that. So this is the phone call where Jolly is relaying conversation with a police officer and everyone agrees it's on a different date. It was on his and a 404B problem with that phone call because the 404B problem is the fact that this conversation suggests repeated interactions with the police. But I just want to point out that the government also used it that way. At page 320 of the record, in the government's closing, they play the audio of that phone call and they say, I'm far from ahead. These police keep taking my drugs and money. And then I wanted to point out as well that they also use it in a way that creates a 403 violation because they say at page 320 of the record, they play the phone call and they say, he's not denying that he had drugs that day. They play that phone call and then they say that. So they're using it as an admission for July 2nd, which is obviously misleading to the jury. At page 223, they play the because the police on July 2nd took his dope and his money. So they're using that phone call in violation of both 404B and 403. So I just wanted to point that out because it wasn't in the briefing where they use it in that way. Second, I wanted to respond to the government's argument about the kind of the legal error that happened here. And they say that we cited Parks as our best case. But I agree that Parks is distinguishable in a couple of ways. The phrase that was problematic in Parks was the phrase robbery surveillance. And you could obviously just kind of take out the word robbery and then there wouldn't be a 404B problem. I think a better case is, there are a couple of better cases. Carpenter, that's the Ninth Circuit case that we cited from 2019 that involved a conspiracy to kidnap. And in that case, there was evidence that the defendant smoked meth during the kidnapping. And this court said that evidence has some salience as direct evidence to rebut the juror's defense, the fact they were smoking meth. But it is also a 404B problem because it's evidence of some other wrong or bad act. Using drugs is generally considered to be a 404B evidence. So despite having some salience as direct evidence, this court found it was also a 404B problem. So I just want to kind of respond to their argument that, what I understand their argument to be is that if the evidence is direct evidence, it does not trigger Rule 404B. And I just think that's... It looks like in Carpenter it was excluded under 403, not 404B. I think it was both. I think it was 403 and 404B, the meth, the smoking meth. We seriously doubt that Velazquez's meth use speaks to his motive to commit kidnapping or conspiracy, although we find that the evidence is probative of a state of mind and absence of arrest. Nonetheless, we conclude that the district court abuses discretion under 403. Well, I don't have it in front of me, but my understanding is it was also found to be a 404B problem. But then another case that I think is more on point is Simpson, which is the 7th Circuit case that we rely on, heavily from 2007. And in that case, the defendant made a post-arrest statement. I was a crack dealer for three to four years. I did similar sales during that time, including for someone called Hatton, who was the subject, one of the subjects of that investigation. And the defendant says, so it's possible I did this sale. And the court in Simpson ruled that that statement was not admissible as inextricably intertwined because it was about unrelated drug sales and it wasn't a conspiracy. And then it also held that it was inadmissible under 404B because it wasn't sufficiently detailed, wasn't enough of a nexus to be construed as an admission. So I think even if this court could come up with a ground for admissibility under 404B sitting here today, that's not how the evidence was admitted at this trial. Yeah, this gets to my confusion question. So can I ask you this question too? I think maybe the district judge somehow got confused about whether either the crime charged was sale or the cause admitted sale. And so that arguably made other sales, other acts. But the crime charged was actually possession with intent to distribute. And I'm still having trouble, like it seems like the district court maybe thought there's a sale and then there are other sales, that's propensity. But if it's intent to distribute, a period of sales would be relevant to intent to distribute, at which point arguably it's not under 404B at all because it's direct evidence. Well, I think it is still under 404B if a jury could, that the phrase this court used in Parks was if the jury would likely infer from the statement that the defendant had committed other bad acts in the past. So I think if, even to the extent that the phone calls have a probative of Jolly's intent during that time period, they present a 404B problem because of how a jury could interpret them and because of how they were used for propensity. And so at that point the real evil here by the district court was not giving the limiting instruction? Correct, your honor. Would that have solved most of your problem? Well, there are two problems. One is there was no limiting instruction telling the jury you cannot consider this for propensity. And then the second different problem is the use of the evidence as propensity evidence at trial. If, I mean, obviously if the court gave a limiting instruction or even if it was just direct evidence, you cannot use that evidence in violation of 404B. So it's two different problems. It's the use at trial and it's the lack of a limiting instruction. And with respect to the September 13th call that was redacted, what was your position on that and where did you kind of have to level down to once you started essentially losing some of your legal points here? So the position on that was that it should be excluded. Entirely? Yes. Okay. So we didn't agree to those. What about the redactions? Did you agree to those? To be honest, I wasn't trial counsel below. I'm not entirely sure, so I don't want to say something that's incorrect. I'm sorry. Okay. Thank you very much. Okay, thank you. Thanks both sides for the helpful arguments. This case is submitted.
judges: Boggs, FRIEDLAND, BRESS